UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Nos.  3:07-CR-132 |
| | ) | 3:15-CR-007 |
| | ) | |
| RUSSELL LEE FINLEY | ) | |

## MEMORANDUM AND ORDER

This criminal case is before the Court on the defendant's *pro se* "Motion to Reduce

Sentence Pursuant to 18 USC § 3582(C)(1)(a) [sic] and the Federal Cares Act of 2020."

[Case No. 3:15-CR-007, doc. 51; Case No. 3:07-CR-132, doc. 35].[1]  The United States has

responded in opposition to the motion.  [Docs. 53, 57].  The defendant has not submitted a

reply within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration.  For the reasons stated below,

the defendant's motion will be denied.

## I.      BACKGROUND

In February 2008, this Court sentenced the defendant to a 92-month term of

imprisonment in Case No. 3:07-CR-132, to be followed by three years of supervised

release, for the crime of bank robbery.  On October 21, 2015, this Court imposed an

additional 24-month sentence due to the defendant's violations of his supervised release

conditions in that case.

---

[1] All subsequent record citations will be to Case No. 3:15-CR-007 unless otherwise noted.

That same date, the Court imposed a consecutive sentence of 156 months' imprisonment in Case No. 3:15-CR-007 on one new count of bank robbery and two counts of Hobbs Act robbery. The defendant is presently housed at FCI Beckley with a projected release date of March 24, 2028. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited September 14, 2020).

The defendant now moves for immediate release due to: the COVID-19 pandemic; leukemia; blood and bone marrow cancer; the Bureau of Prisons' ("BOP") purported failure to allow him to see an outside specialist since March 12, 2020; "other respiratory ailments" requiring use of a C-PAP device; and his status as "a model inmate."

## II.  CARES ACT

Section 12003 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), presently and temporarily provides for expanded prisoner home confinement. However, the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the BOP. The Court therefore does not have power to grant home confinement under the CARES Act. The defendant's request for CARES Act relief must therefore be denied.

## III.  COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a

3

sentence reduction. *Id*. at *2 (citations omitted). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id*. (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

## A. Exhaustion

The defendant has previously submitted a request to the BOP which was construed as one for compassionate release, and more than 30 days have passed since that request was received by the warden. [Doc. 51, p. 4-6]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

4

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

    (I)     suffering from a serious physical or medical condition,

    (II)     suffering from a serious functional or cognitive impairment, or

    (III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A).

The Court construes the defendant's motion as relying on subsection (A)(ii)(I). As noted above, he cites: the COVID-19 pandemic; leukemia; blood and bone marrow cancer; the BOP's purported failure to allow him to see an outside specialist since March 12, 2020; "other respiratory ailments" requiring use of a C-PAP device; and his status as "a model inmate."

The COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of

5

COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Turning to the defendant's respiratory difficulties, the Court notes that the defendant has been diagnosed with sleep apnea. [Doc. 57, p. 9]. However, he no longer uses his C-PAP device or his prescribed inhaler. [*Id.*, 57. p. 7, 11].

The defendant has been diagnosed with essential thrombocytosis, a blood disorder which can sometimes lead to leukemia. There is, however, no record that this has happened in the defendant's case, or that the defendant presently suffers from any other form of cancer. Additionally, his blood is checked monthly and the results are sent to a hematology specialist by the BOP. [*Id.*, p. 7, 11].

As for the defendant's claim that the BOP will no longer allow him to see an outside specialist, the Court observes that the defendant himself signed a refusal for his July 24, 2020 appointment at Raleigh Cancer Center in order to avoid a mandatory quarantine upon his return from that appointment. [*Id.*, p. 1].

Nonetheless, in consideration of the record discussed above—most specifically the defendant's diagnosis of sleep apnea and the fact that he is under the care of an oncologist—the Court will presume without finding, *solely for the purpose of the instant motion* and in extreme deference to the his *pro se* status, that the defendant has demonstrated an "extraordinary and compelling reason" for compassionate release.

### 2. Danger to Any Other Person or to the Community

The defendant deems himself a "model inmate." The record shows otherwise. That fact, paired with his criminal history, leads the Court to find that the defendant has not

shown that he would not be a danger if released.

Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

7

The Court has considered the above-listed factors and has refamiliarized itself with the defendant's PSR. The Court has also considered the defendant's BOP SENTRY Report.

In this case, the defendant pled guilty to three robberies and was charged with three more. [Doc. 21, p. 4]. He has a prior federal bank robbery conviction, in which he displayed what at the time appeared to be a semi-automatic pistol. [*Id.*, ¶ 69]. Other prior convictions include receiving stolen property (multiple), breaking and entering (multiple), theft (multiple), robbery (with attempted or threatened infliction of physical harm), attempted unauthorized use of a motor vehicle (flight from an officer), and controlled substance offenses. [*Id.*, ¶ 57-68].

During his current term of imprisonment, the defendant has been sanctioned for disciplinary infractions seven times, indicating that he is not the "model inmate" he claims to be. Those infractions include: use or possession of homemade intoxicants (three occasions); possession of a non-hazardous tool; possession of a homemade "stinger"; and fighting with another inmate. The fighting infraction occurred while the instant motion was pending before this Court.

The defendant's troubling criminal history and his ongoing inability to behave himself while in BOP custody leaves the Court unable to find that he would not pose a danger to the safety of another person or the community if released. For this reason, the defendant's motion must be denied.

8

**3. Section 3553(a) Factors**

The facts underlying a review of the 18 U.S.C. 3553(a) factors in this case are essentially the same as those considered in the preceding section of this memorandum. The requested sentence reduction in this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2). For these additional reasons, the defendant's motion must be denied.

## IV. CONCLUSION

As provided herein, Defendant's motion to reduce sentence [Case No. 3:15-CR-007, doc. 51; Case No. 3:07-CR-132, doc. 35] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

_____
s/ Leon Jordan
United States District Judge